**Exhibit B**

**March 17, 2021 Hearing Transcript**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| | Case No. 20-12836 (JTD) |
| CRED INC., *et al.*, | |
| | (Jointly Administered) |
| | 824 Market Street |
| Debtors. | Wilmington, Delaware 19801 |
| | Wednesday, March 17, 2021 |
| | 2:01 p.m. |

TRANSCRIPT OF HYBRID TELEPHONIC/ZOOM HEARING
BEFORE THE HONORABLE JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors: Scott D. Cousins, Esquire
Scott Jones, Esq.
COUSINS LAW, LLC
Brandywine Plaza West
1521 Concord Pike
Suite 301
Wilmington, Delaware 19803

-and-

James T. Grogan, Esquire
PAUL HASTINGS, LLP
600 Travis Street
58th Floor
Houston, Texas 77002

(APPEARANCES CONTINUED)

Electronically Recorded By: Jason Spencer, ECRO

Transcription Service: Reliable
1007 N. Orange Street
Wilmington, Delaware 19801
Telephone: (302) 654-8080
E-Mail: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording: transcript produced by transcription service.

APPEARANCES (CONTINUED):

| | |
|---|---|
| For the Debtors: | Avram Luft, Esquire<br>PAUL HASTINGS, LLP<br>200 Park Avenue<br>New York, New York 10166 |
| For the Trustee: | James J. McMahon Jr., Esquire<br>UNITED STATES DEPARTMENT OF JUSTICE<br>OFFICE OF THE UNITED STATES TRUSTEE<br>844 King Street<br>Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801 |
| For the Official Committee of Unsecured Creditors: | Darren Azman, Esquire<br>David Hurst, Esquire<br>MCDERMOTT WILL & EMERY, LLP<br>340 Madison Avenue<br>New York, New York 10173 |
| For Robert J. Stark: | Andrew M. Carty, Esquire<br>BROWN RUDNICK, LLP<br>Seven Times Square<br>New York, New York 10036 |
| For James Alexander: | Mark Pfeiffer, Esquire<br>BUCHANAN INGERSOLL & ROONEY<br>700 Alexander Park<br>Suite 300<br>Princeton, New Jersey 08540-6347 |

INDEX


| MATTERS GOING FORWARD: | | PAGE |
|---|---|---|
| Agenda Item 1: | Motion to Withdraw as Attorney of Record for James Alexander [Docket No. 542, 2/23/21] | 4 |
| Court's ruling | | 13, 17 |
| Transcriptionist's Certificate | | 19 |

(Proceedings commenced at 2:01 p.m.)

THE COURT: Good afternoon. Can everyone hear me okay? All right.

This is Judge Dorsey. We're on the record in Cred Inc., Case Number 20-12836. I'll go ahead and turn it over to debtors' counsel to run the agenda.

MR. COUSINS: Good afternoon, Your Honor, Scott Cousins on behalf of debtors Cred Inc.

There are two matters on the agenda, one is a status conference. The first is Mr. Pfeiffer's motion to withdraw as counsel for Mr. Alexander.

THE COURT: All right. Mr. Pfeiffer, are you on?

MR. PFEIFFER: Good afternoon, Your Honor, Mike Pfeiffer on behalf of Buchanan Ingersoll & Rooney in connection with our firm's motion to withdraw as counsel for Mr. Alexander.

I would like to make one correction to the motion before starting, Your Honor. We have a citation to RPC 1.16(a)(3) in our motion, which deals with a discharge of the attorney. That has not occurred, that is an errant citation. This is a matter under RPC 1.16(b).

As with these types of motions, Your Honor, we've alleged that there are irreconcilable differences which make it difficult, if not impossible, for this firm to continue to represent this debtor -- or Mr. Alexander. In addition, Mr.

Alexander is in his own Chapter 7 case in California and does not have the ability to continue to retain us in this matter.

As with these types of motions, we are available if the Court has questions as to the specific reasons for the withdrawal or for the termination of the relationship, and we can provide those reasons to the Court in camera.

There has been an objection to the motion to withdraw filed by the committee. And, essentially, the committee takes the position that it would be difficult for this firm to withdraw at the present time because there are unfinished issues with respect to the Court's order from February 5th, 2021.

We have filed this morning -- or this afternoon, not filed, but we submitted to debtors' counsel, the committee, and to chambers a supplemental affidavit, and we have also provided discovery in connection with what's been called the Phase II discovery, which deals with the debtors' personal financial information. And as the Court could imagine, because the debtor filed a Chapter 7 bankruptcy, much of the information is already in the debtor's statement of financial affairs and bankruptcy schedules in his personal bankruptcy case.

With regard to the Court's order as far as unfinished business, we took the Court's order very seriously. And, rightfully, you know, the Court was

concerned about immediately getting back bitcoin that was in my client's possession that were derived from the debtors. And on the day of the hearing my client turned over approximately 50 bitcoin worth approximately $1.9 million at the time and approximately $2.7 million in USDT, which is a cryptocurrency that is tied to the United States dollar.

We have also provided or helped the debtor -- or Mr. Alexander provide information that the Court was concerned about. If the Court recalls, there was a dispute as to whether or not the debtor held 225 bitcoin or 150 bitcoin. We've provided information to the debtor that 75 bitcoin were liquidated prepetition, and the proceeds of that liquidation went into a coin-based account and ultimately into Wells Fargo accounts and JPMorgan accounts.

We also provided information to the debtor and the committee concerning a liquidation of 100 bitcoin in January 2021. Again, it went into a bitcoin account and ultimately into the USDT coin that was turned over to the debtor on February 5th. Some of the proceeds apparently wound up in the Wells Fargo and the JPMorgan accounts.

We provided information concerning the JPMorgan account, the Wells Fargo account, and the coin-based accounts to the debtor and to the committee, and, specifically, we provided what I believe are the relevant account statements for those accounts. And, ultimately, those accounts or

subsequently the DIP account into which those accounts flowed were turned over to the debtor.

So, from my perspective, a large portion of the Court's order from February 5th was to get the property back to the debtor and get information to the debtor about the transactions, and I believe that has occurred. What has not finally occurred or fully occurred is the deposition. That was still out there, that was interrupted by the debtor's bankruptcy filing. From our perspective, the debtor can sit through a deposition. Whether the debtor chooses to sit through a deposition or not, that's not necessarily within the control of our firm.

So the short of it, from our perspective, is that if we get out of this case as a firm now, you know, the committee and the debtor or the liquidating trustee still have whatever rights they have against the debtor or against Mr. Alexander.

I'm aware of no other material bitcoin that was derived from -- or any crypto that was derived from Cred that has not been turned over. There are accountings that probably need to be done and figured out, but the debtor and the committee have all that information. They probably need to ask some deposition questions about it, but that can be done without our firm and if the debt -- if Mr. Alexander agrees to submit to a deposition.

But at this point, Your Honor, the continued representation of Mr. Alexander by our firm is, regrettably, not something that we can continue with in the scope of -- well, it's not something we can continue and we would request that we be permitted to withdraw pursuant to RPC 1.16(b).

THE COURT: Has Mr. Alexander undertaken steps to obtain replacement counsel in this case?

MR. PFEIFFER: Mr. Alexander has been advised that he should undertake steps to retain replacement counsel. I believe he has communicated with replacement counsel, I do not know if he has retained replacement counsel.

THE COURT: Is Mr. Alexander's California counsel on the call today?

MR. PFEIFFER: If I may scroll through the list, Your Honor?

THE COURT: Yes.

(Pause)

THE COURT: It doesn't appear on the list that I have.

MR. PFEIFFER: Your Honor, I don't see either the bankruptcy lawyer or the general California counsel on the list of today's hearing.

THE COURT: What -- who's -- I didn't know there was general California counsel. I thought he had a bankruptcy counsel in California, what's the general counsel

that he has?

MR. PFEIFFER: Bird, Marella is the general counsel or the litigation counsel handling various matters. And the principal lawyer there is referenced in the declaration, Thomas Reichert, who also has in his possession some of the equipment that the Court instructed be turned over to Mr. Reichert.

THE COURT: All right. Let me hear from UCC's counsel who objected.

MR. AZMAN: Good afternoon, Your Honor, Darren Azman, McDermott Will & Emery, counsel to the committee.

Your Honor, the withdrawal motion is very much tied to the contempt motion, as well as the original emergency order that Your Honor entered. The fact is, as we sit here today, Mr. Alexander has not complied with the order. If it is acceptable, I think it would be beneficial for us to address the contempt motion, as Mr. Pfeiffer did, because it does lay the foundation for why we're asking the Court to deny the withdrawal motion. That is, once the order is complied with, we have no objection to Buchanan's withdrawal. We understand the circumstances they're in right now, but we're not there quite yet.

So, if it's acceptable, I'd like to address some issues with the contempt motion.

THE COURT: All right. I'm not going to -- I'm

certainly not hearing the contempt motion, but you can address whatever you think is necessary --

MR. AZMAN: Yeah.

THE COURT: -- to deal with the withdrawal motion.

MR. AZMAN: Understood. Your Honor, the emergency order that you entered was very clear about what Alexander was required to do and when he was required to do it. As I said a moment ago, as we sit here right now, he has not complied with that order. Yes, he has complied in some respects and that's great, but he is nowhere near satisfying the obligations that you laid out very explicitly, which includes turnover of assets that Alexander has admitted are Cred Capital's property and, equally important, a declaration and discovery on a host of issues that will allow the committee and ultimately the liquidation trust to recover estate property and discharge their fiduciary obligations.

Time and time again, Your Honor, Mr. Alexander has come up with excuse after excuse. As you know, Mr. Alexander's thrilling line of excuses culminated in his personal bankruptcy filing in the middle of our deposition. We had informally asked Mr. Alexander to consent to lifting the stay so that we could enforce Your Honor's order. Perhaps unsurprisingly, he declined. So we went out to California and the judge very quickly entered an oral order from the bench immediately lifting the stay for us to proceed

on these issues before Your Honor.

Since that time, since that court had lifted the automatic stay, we have gotten practically nothing from Alexander other than around $130,000 of cash. But up until yesterday, late afternoon, we had not received a single piece of additional information that Your Honor had ordered Alexander to provide, including any information regarding Alexander's assets that he deems to be his personal assets, but we're all very skeptical in terms of characterizing it that way.

This needs to end and we need to execute on the order that Your Honor granted us, and Mr. Alexander needs to respect the law. We're under no illusion that the relief we asked for in the contempt motion is extraordinary, there's no other way to put it, but at the same time we don't see that there's any other relief that would coerce Alexander to comply with the order. The estate already has significant claims against Alexander, we believe in excess of $50 million. There's questions about whether the automatic stay would preclude monetary sanctions from being issued. So Your Honor has nothing left but jail time for Mr. Alexander, in our view, until he complies with the order. So that's why we asked the Court to issue a bench warrant and to take that action.

Now, late yesterday afternoon, around 4 o'clock,

we did receive additional discovery from Mr. Alexander. And then shortly before today's hearing, I would say about an hour ago, we received a new declaration. We received it the same time it was sent to Your Honor's chambers. We're still reviewing everything, but there are already very obvious and significant deficiencies, and I'm sure that list is going to grow once we finish our review. We're happy to walk through our initial issues list for why he's not complying still. I'm not sure that would be a productive use of the Court's time, but the point is that Mr. Alexander is going to continue to be evasive in his responses until there are serious consequences imposed on him for noncompliance.

Now, that ties directly into -- excuse me just a moment -- that ties directly into Buchanan's motion to withdraw because the job is not done. They're the ones who are most inured with these matters, they received whatever benefit it is that they received representing Mr. Alexander for the past several months in the case, and we think the case law is there to support the proposition that they should be -- they should continue in that representation until the job is done.

And, you know, I think the quote from our briefing on this issue is probably best: "An attorney has certain obligations and duties to apply once representation is undertaken that do not evaporate because the case becomes

more complicated or the work more arduous. Attorneys must never lose sight of the fact that the profession is a branch of the administration of justice and not a mere money-getting trade."

Your Honor, we don't think that Buchanan should be able to withdraw, the job is not done.

THE COURT: Thank you, Mr. Azman.

Anyone else wish to be heard before I go back to Mr. Pfeiffer?

All right. Mr. Pfeiffer, I sympathize with your position and I understand the difficult position that you are in, but at this point, given the fact that we have this contempt motion pending, I think it would be inadvisable for me to allow you to withdraw at this time until we can see where this case is going to go. And I'll talk about the contempt motion in a moment, but -- so at this point I'm going to -- I'll deny the motion to withdraw without prejudice to renew it again, and I will actually bring it up myself in the future to see where things are.

And hopefully Mr. Alexander understands the seriousness of the situation that he is in at this time and would seek to obtain new counsel, because if the contempt motion goes forward, you know, there's a risk that he could end up in jail. And if he is in fact a fugitive from the law in the U.K., he could end up in serious criminal -- a

criminal position as well.

So, for those reasons, I think it's not advisable for me to allow you to withdraw at this time.

On the contempt motion, because it is asking for Mr. Alexander's incarceration, there are serious questions about whether or not a bankruptcy court as an Article 3 court has the authority to do that. And to avoid those issues and also because, as I said, if Mr. Alexander is in fact a fugitive from the U.K., it resulted in further criminal allegations against him, then I think it's important that this be heard by the district court and not by me.

And I'd point out that Rule 9020 provides that Rule 9014 governs motions for contempt, and 9014 provides that a person before contempt can be entered has to be given notice and an opportunity to be heard. And the notice under 9014 has to be the type of notice that is provided under Rule 7004 for summons -- for issuance of a summons and complaint.

So it's certainly not something that can be done off the cuff because it wasn't -- the contempt is not alleged to be something that occurred in front of me, it was something that occurred outside the Court's purview. So it would require a full hearing and an opportunity for Mr. Alexander to be heard before any contempt could be granted.

So I would -- well, what you should do -- and I've actually already contacted the district court to give them a

heads-up that this might be coming -- is to file a motion to withdraw the reference to allow the contempt motion to be heard before the district court and proceed in that manner.

Does that -- does anybody have any questions about that?

MR. AZMAN: Thank you, Your Honor. Would Your Honor be willing to hear that motion for the withdrawal of the reference on shortened notice?

THE COURT: I think that gets heard by the district court, not by me.

MR. AZMAN: The district court, that's right, that's right. Okay, thank you.

THE COURT: But, as I said, I did give the district court a heads-up that this would be coming, likely be coming. So if it is something you want to do, I would go ahead, and make the request and make the request on an expedited fashion and see if the district court will agree to do that.

MR. JONES: Your Honor, I'm sorry to jump in, but does your Court need to make a core/non-core determination for the benefit of the district court or can we go right to the district court.

THE COURT: I think it can go just straight to the district court to withdraw the reference. I don't think there's any need for me to make a determination on that, but

if you need to -- yeah, I don't know if this would be a core or non-core matter, to be honest with you, Mr. Cousins. I've never dealt with this situation before either in practice or on the bench, but --

MR. JONES: Yeah, Your Honor, the only reason I raise it, if I recall, there's some old case law that requires Your Honor to make the core/non-core determination to help the district court make a decision, but I think because of the criminal overlay, I understand where the Court is going. And I'm sorry to intervene; I just want to make sure this goes as quickly as possible.

THE COURT: No, I understand, and it should be done quickly and I think it's something that can be done quickly. If there is an issue, if the district court raises a question about whether or not it's a core or non-core and they need me to make a decision, I certainly would do that on an expedited basis, but I don't think you need to -- in this circumstance, I don't think you need to do that. We're all treading new ground here.

MR. JONES: Yes.

THE COURT: All right. Anything else for today?

MR. AZMAN: Not from the committee, Your Honor. Thank you.

THE COURT: Mr. Pfeiffer, if there is anything that you think I should know that -- with regard to your

representation of Mr. Alexander, you can certainly submit that to me in camera, and I will look at that and consider that as we go forward on reconsidering your motion for withdrawal later on down the road.

MR. PFEIFFER: Your Honor, I appreciate that. Would the Court consider just generally adjourning this motion in lieu of denying it without prejudice, so that if something does develop we don't have to go through the process again?

THE COURT: That's fine with me. Yeah, we can do that. I'll just adjourn the motion until some undetermined time in the future -- or why don't we -- hopefully, this moves very quickly. When is our next omnibus in this case?

MR. JONES: Your Honor, it's April 1st, I believe.

THE COURT: All right. Why don't we -- why don't you go ahead and re-notice it for April 1st, Mr. Pfeiffer, and we'll consider it then --

MR. PFEIFFER: We will. Thank you, Your Honor.

THE COURT: -- and we'll look at it again at the next omnibus hearing. Hopefully, by then we'll be a little further down the road with the district court and we'll know what's going on. All right?

Is there anything else just status-wise or housekeeping-wise that we can talk about as long as we're on the call today? Nothing? Everything else is going smoothly

except for this one hiccup?

MR. AZMAN: Your Honor, it's Darren Azman again for the committee. The only status update I think that is worthwhile is we're moving towards going effective under the plan. So we're -- you know, we don't have a time frame, but we're working through those issues now. And there are some, you know, unique circumstances as always in this case with transferring assets from the debtors to the trust and some other related issues, but that's the direction we're heading in and we're hopeful to go effective soon.

THE COURT: Okay. Thank you, Mr. Azman.

All right. Well, if there's nothing else for today, then we are adjourned and I'll see everybody on April 1st.

COUNSEL: Thank you, Your Honor.

THE COURT: Thank you. We're adjourned.

(Proceedings concluded at 2:24 p.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ Tracey Williams March 17, 2021

Tracey Williams, CET-914

Certified Court Transcriptionist

For Reliable